IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ED (ITE) CHEN,                          )
                                        )
         Plaintiff,                     )
                                        )
v.                                      )          C.A. No. 16-00385-RGA
                                        )
RICARDO SAGRERA, et al.                 )
                                        )
         Defendants.                    )

## DEFENDANT RICARDO SAGRERA'S
## OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS

OF COUNSEL:

David Bolton, Esq.
David Bolton, P.C.
666 Old Country Road
Suite 509
Garden City, NY 11530
(516) 222-0600
dbolton@dboltonpc.com

Dated: September 14, 2016

CONNOLLY GALLAGHER LLP
Ryan P. Newell (#4744)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, Delaware 19801
(302) 757-7300
rnewell@connollygallagher.com

*Attorneys for Defendant Ricardo Sagrera*

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ..................................................................................................................1

PRIOR AND CURRENT PROCEEDINGS .........................................................................1

SUMMARY OF ARGUMENT .............................................................................................2

STATEMENT OF FACTS ....................................................................................................2

ARGUMENT ........................................................................................................................3

I.  VENUE IS NOT PROPER IN THIS DISTRICT ....................................................3

II.  THE COMPLAINT SHOULD BE DISMISSED AS AGAINST
DEFENDANT SAGRERA BECAUSE OF IMPROPER SERVICE
AND BECAUSE OF LACK OF PERSONAL JURIDICTION ............................4

    A.  Rule 4(e) Of The Federal Rules Of Civil Procedure....................................5

    B.  The Director Consent Statute Does Not Apply.............................................5

    C.  Leave To Serve Defendant Sagrera Should Be Denied ...............................8

III.  LACK OF SUBJECT MATTER JURISDICTION ...............................................9

    A.  Lack Of Federal Question Jurisdiction .......................................................9

        1.  Plaintiff has not alleged facts sufficient to allege a violation
of the CFAA.....................................................................................10

        2.  Plaintiff has not alleged statutory "loss" or "damage" .................13

    B.  There Is No Diversity Jurisdiction.............................................................15

        1.  Plaintiff's allegations concerning his domicile are
conclusory .......................................................................................15

        2.  Plaintiff's allegations of domicile are contradicted
by his prior pleadings......................................................................15

IV.  IF NOT DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION,
OR LACK OF PERSONAL JURISDICTION, THE COMPLAINT
SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) ...........................16

A.   Breach Of Fiduciary Duty ........................................................................16

B.   Common Law Fraud ...............................................................................17

    1.   Failure to plead with particularity ..................................................17

    2.   Failure to state a claim .................................................................17

C.   Violation Of The CFAA ..........................................................................19

D.   Tortious Interference ..............................................................................19

CONCLUSION ..............................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atlantic Corp. v. Twombly,*
  127 S.Ct. 1955 (2007).................................................................................................. 11

*Carlyle Inv. Management LLC v. Moonmouth Co. SA,*
  779 F.3d 214 (3rd Cir. 2015) ........................................................................................ 3

*CollegeSource, Inc. v. AcademyOne, Inc.,*
  597 Fed. Appx. 116 (3d Cir. 2015)........................................................................ 12, 13

*Dresser-Rand Co. v. Jones,*
  957 F. Supp.2d 610 (E.D. Penn. 2013) .......................................................................11

*Gill v. Delaware Park, LLC,*
  294 F. Supp.2d 638 (D. Del. 2003)..............................................................................19

*Gould Electronics Inc. v. U.S.,*
  220 F.3d 169 (3d Cir. 2000)........................................................................................... 9

*Guth v. Loft, Inc.,*
  5 A.2d 503 (Del. 1939) .................................................................................................17

*Hazout v. Ting,*
  134 A.3d 274fn 63 (Del. 2016)...................................................................................... 5

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
  806 F.3d 125 (3d Cir. 2015)..........................................................................................15

*In re Veritas Holdings, Inc.,*
  536 B.R. 589 (Bankr. D. Del. 2015).............................................................................14

*Jarosch v. American Family Mutual Ins. Co.,*
  837 F. Supp.2d 980 (E.D. Wis. 2011)...........................................................................14

*Kelly v. McKesson HBOC, Inc.,*
  2002 WL 88939 (Del. Sup. Ct. 2002)............................................................................ 7

*Lincoln Ben. Life Co. v. AEI Life, LLC,*
  800 F.3d 99 (3d Cir. 2015)............................................................................................. 9

*Malleus v. George,*
  641 F.3d 560 (3d Cir. 2011)..........................................................................................11

*McCann v. Newman Irrevocable Trust,*
    458 F.3d 281 (3d Cir. 2006)................................................................................................ 16

*Mennen Co. v. Atlantic Mut. Ins. Co.,*
    147 F.3d 287 (3d Cir. 1998)................................................................................................ 15

*Metcalfe v. Renaissance Marine, Inc.,*
    566 F.3d 324 (3d Cir. 2009)................................................................................................ 8

*Mobilificio San Giacomo S.P.A. v. Stoffi,*
    1996 WL 924508 (D. Del. 1996).......................................................................................... 5

*National Industries Group (Holding) v. Carlyle Inv. Management L.L.C.,*
    67 A.D.3d 373 (Del. 2013) .............................................................................................. 3, 4

*Nexans Wires S.A. v. Sark-USA, Inc.,*
    166 Fed.Appx. 559 (2d Cir. 2006)...................................................................................... 14

*North American Catholic Educational Programming Foundation, Inc. v. Gheewalla,*
    930 A.2d 92 (Del. 2007) ...................................................................................................... 6

*P.C. Yonkers v. Celebrations The Party And Seasonal Superstore, LLC,*
    428 F.3d 504 (3d Cir. 2005)........................................................................................ 10, 13

*Pac. Aero. & Elec., Inc. v. Taylor,*
    295 F. Supp.2d 1188 (E.D. Wash. 2003) ........................................................................... 10

*Pestolite, Inc. v. Cordura Corp.,*
    449 A.2d 263 (Del. Sup. Ct. 1982) ..................................................................................... 6

*Phillips v. Audio Active Ltd.,*
    494 F.3d 378 (2nd Cir. 2007).............................................................................................. 3

*Phillips v. County of Allegheny,*
    515 F.3d 224 (3rd Cir. 2008) .............................................................................................. 1

*Ruggiero v. FuturaGene, plc.,*
    948 A.2d 1124 (Del. Ch. 2008)............................................................................................ 6

*Toner v. Allstate Ins. Co.,*
    829 F. Supp. 695 (D. Del. 1993).......................................................................................... 18

*TriStrata Tech., Inc. v. Neoteric Cosmetics, Inc.,*
    961 F. Supp. 686 (D. Del. 1997).......................................................................................... 9

*U.S. Bank N.A. v. Gunn,*
   23 F. Supp.3d 426 (D. Del. 2014)...................................................................... 20

*Universal American Corp. v. Partners Healthcare Solutions Holdings, L.P.,*
   61 F. Supp. 3d 391 (D. Del. 2014) .................................................................... 18

*Washington v. Hovensa, LLC,*
   652 F.3d 340 (3d Cir. 2011)............................................................................... 15

*Watkins v. Int. Union, Security, Police and Fire Professionals of America,*
   2016 WL 1166323 (D. Del. March 23, 2016)..................................................... 20

*WEC Carolina Energy Solutions LLC v. Miller,*
   687 F.3d 199 (4th Cir. 2012) ............................................................................. 12

**Statutes**

10 *Del. C.* § 3104(c)(1)-(4) .................................................................................... 8

10 *Del. C.* § 3114 ........................................................................................... 4, 5, 7

18 U.S.C. § 1030............................................................................................................. 9

18 U.S.C. § 1030(a)(4) ....................................................................................... 10, 13

18 U.S.C. § 1030(b) ............................................................................................ 10, 13

18 U.S.C. § 1030 (e)(2)(B) ......................................................................................... 11

18 U.S.C. § 1030(e)(11)............................................................................................... 14

18 U.S.C. § 1030(e)(6)................................................................................................. 13

18 U.S.C. § 1030(e)(8)................................................................................................. 13

18 U.S.C. § 1030(g) ..................................................................................................... 10

**Rules**

Fed. R. Civ. P. 4(e) ................................................................................................. 4, 5

Fed. R. Civ. P. 9....................................................................................................... 1, 17

Fed. R. Civ. P. 12(b)(1), (2), (3), (5), and (6) ............................................................ 1

## INTRODUCTION

Defendant Ricardo Sagrera ("Sagrera") moves to dismiss the Complaint (D.I. 1; the "Complaint") pursuant to FRCP 9 and 12(b)(1), (2), (3), (5), and (6). Sagrera submits that dismissal should be with prejudice because it would be inequitable and futile to grant plaintiff leave to amend where, as here, the plaintiff sued Sagrera in New York State, which action was dismissed for failure to state a claim, where plaintiff sued Sagrera in this court and filed an amended complaint, as of right, which amended complaint was dismissed by the Court *sua sponte* with leave to replead, and where the plaintiff withdrew the action (after amending his complaint for a second time) in response to defendants' motions to dismiss. Simply put, the plaintiff has been provided an ample opportunity to frame a complaint but he has been unable to do so. *See Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3rd Cir. 2008), holding that leave to amend may be denied where "an amendment would be inequitable or futile."

## PRIOR AND CURRENT PROCEEDINGS

This is the third action the *pro se* plaintiff has commenced against Sagrera.

The first action was filed in New York on May 30, 2015 (the "New York Action"). See declaration of David Bolton, dated September 10, 2016 (the "Bolton Dec.") at Exhibit A. The New York Action was dismissed on motion. *See* Bolton Dec. Exhibit B.

The second action was filed in this court on July 14, 2015 with Civil Action Number 15-598 (the "Prior Action"). (D.I. 2 in the Prior Action). Plaintiff filed an Amended Complaint on September 3, 2015 (the "FAC"). (D.I. 6 in the Prior Action). By order dated October 20, 2015, the Court dismissed the FAC, but granted plaintiff leave to file a Second Amended Complaint (the "SAC"). (D.I. 16 in the Prior Action). The plaintiff filed the SAC on November 10, 2015. (D.I. 17 in the Prior Action). In order to avoid dismissal of the Prior Action, the plaintiff filed a Notice of Voluntary Dismissal. (D.I. 44 in the Prior Action).

On May 24, 2016, plaintiff filed his complaint in this action.  (D.I. 1).  Plaintiff made no attempt to serve any of the defendants until August 31, 2016 when he served Sagrera (ineffectually) by serving Viceroy Chemical, Inc.'s ("ViceChem") registered agent in Delaware.

This is Sagrera's opening brief in support of a motion to dismiss the Complaint.

## SUMMARY OF ARGUMENT

I.      Venue is not proper in this District because plaintiff and defendants Sagrera and Godfroy are parties to a Stockholders' Agreement which provides for exclusive venue in New York State for the resolution of disputes arising directly or indirectly from that agreement.

II.     Sagrera has not been properly served with the Summons and Complaint in this action.

III.    Sagrera is not subject to jurisdiction in the State of Delaware.

IV.     There is no subject matter jurisdiction.

V.      Each of the four causes of action asserted against Sagrera fails to state a claim on which relief can be granted.

## STATEMENT OF FACTS

The crux of the plaintiff's claim is that certain of the defendants forged plaintiff's signature on documents and that defendants interfered with an alleged business opportunity.

The plaintiff admits that he signed the Memorandum of Understanding (the "MOU"), which is attached to the Complaint as Exhibit 3, and he admits that he signed a Contribution Agreement, the signature page of which is attached to the Complaint as Exhibit 13.  Complaint, ¶¶ 14 and 28.  A copy of the Contribution Agreement is attached to the Declaration of Ricardo A. Sagrera, dated September 7, 2016 (the "Sagrera Dec."), as Exhibit C.

2

## ARGUMENT

### I.    VENUE IS NOT PROPER IN THIS DISTRICT

One of the documents plaintiff claims was forged is Stockholders' Agreement. *See* Complaint, ¶ 27. Paragraph 8.10 of the Stockholders' Agreement provides, in relevant part, as follows:

> For all matters arising directly or indirectly from this Agreement ("Agreement Matters"), each of the parties hereto hereby (i) irrevocably consents and submits to the sole and exclusive jurisdiction of the United States District Court for the Southern District of New York and any state court in the State of New York that is located in New York County….in connection with any legal action, lawsuit, arbitration, mediation, or other legal or quasi legal proceeding ("Proceeding") directly or indirectly arising out of or relating to any Agreement Matter….

A copy of the Stockholders' Agreement is attached to the Sagrera Dec. as Exhibit D.

Under Delaware law, forum selection clauses are fully enforceable. *See, e.g., Carlyle Inv. Management LLC v. Moonmouth Co. SA*, 779 F.3d 214 (3rd Cir. 2015). The result is no different if New York law is applied.[1] *See Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2nd Cir. 2007).

The fact that plaintiff is claiming that his signature on the Stockholders' Agreement was forged does not change this conclusion. Indeed, in *National Industries Group (Holding) v. Carlyle Inv. Management L.L.C.*, 67 A.D.3d 373, 380 (Del. 2013), the court held that the potential invalidity of an agreement as a whole – as opposed to the forum selection clause itself – would not prevent enforcement of the forum selection clause and that the court of proper venue would determine "whether the contract is enforceable or void *ab initio*." A claim of forgery arises, directly or indirectly, from the agreement itself. A party should not be permitted to avoid

---

[1]    The Stockholders' Agreement provides for the application of New York law, except under certain circumstances. *See* Stockholders' Agreement at ¶ 8.10.

a forum selection clause by simply claiming forgery.  This conclusion is even more appropriate here because the plaintiff admits that he executed other documents (the MOU and the Contribution Agreement) both of which provide for the application of New York law and one of which (the MOU) provides for resolution of disputes in New York.  Simply put, the documents demonstrate that the parties expected and intended that New York law would apply to any dispute and that venue for resolution of disputes would lie exclusively in New York.

## II.  THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER SERVICE AND BECAUSE OF LACK OF PERSONAL JURISDICTION

The plaintiff has not served Sagrera with the Summons and Complaint.  Instead, he had the documents delivered to Corporation Service Company ("CSC").  Sagrera Dec. at ¶ 4.  CSC is not, and never has been, appointed or authorized to accept service of process for Sagrera.  *Id.* Nor has CSC been appointed as Sagrera's agent for service of process as a matter of law. Accordingly, service on Sagrera by delivery of the Summons and Complaint to CSC is not effective under Rule 4(e) of the Federal Rules of Civil Procedure.

In addition, Sagrera is not properly subject to personal jurisdiction in Delaware. Accordingly, the Complaint should be dismissed without an extension of time to effectuate service because granting such relief would be futile.

Sagrera anticipates that, in response to the arguments with respect to both service of process and personal jurisdiction, plaintiff will rely on Delaware's "director consent statute," 10 *Del. C.* § 3114.  This statute, however, is not applicable here because no claims have been asserted "by or on behalf of, or against" Viceroy Chemical, Inc., nor do the claims which are asserted allege a violation by Sagrera of any duty owed to ViceChem or to the plaintiff in his capacity as a shareholder of ViceChem.  To the contrary, the claims asserted by the plaintiff are entirely personal in nature.  *See, e.g.,* Complaint, ¶ 61, claiming that "[t]hese facts relate to

4

Chen's standing to sue as an individual rather than in a derivative action."

To the extent that Sagrera is determined to be subject to jurisdiction pursuant to § 3114 with respect to any claim asserted, all other claims which are not "sufficiently related" to such claim should be dismissed for lack of personal jurisdiction. *See Mobilificio San Giacomo S.P.A. v. Stoffi*, 1996 WL 924508, * 10 (D. Del. 1996); *Hazout v. Ting*, 134 A.3d 274, 292 at fn 63 (Del. 2016).

## A.     Rule 4(e) Of The Federal Rules Of Civil Procedure

As applicable here, Rule 4(e) of the Federal Rules of Civil Procedure requires service pursuant to state law or by delivering process to an agent authorized to receive service by appointment or operation of law.

The only method of service employed by the plaintiff was service on CSC, which is ViceChem's registered agent for service of process, not Sagrera's agent.  Accordingly, service on Sagrera was proper only if Sagrera is deemed to have appointed CSC as his agent pursuant to Delaware's Director Consent Statute, 10 *Del. C.* § 3114.  As shown below, the Director Consent Statute is not operative.

## B.     The Director Consent Statute Does Not Apply

10 *Del. C.* § 3114 provides for jurisdiction in Delaware over officers and directors of Delaware corporations in: (a) actions by or against the corporation if the officer/director is a necessary or proper party and (b) actions against an officer/director for violation of a duty "in such capacity."  Only the second portion of the statue, which is called the Internal Affairs Claim Provision, is applicable here.

In *Hazout*, the Delaware Supreme Court analyzed and confirmed the limited reach of the Internal Affairs Claim Provision stating that the provision "addresse[s] only claims against

nonresident fiduciaries of Delaware corporations for internal affairs claims involving an argument that they breached statutory or fiduciary duties they owed to the corporation or its stockholders...." *See also North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007).

The court in *Hazout* then distinguished the types of claims which give rise to jurisdiction pursuant to the Internal Affairs Claim Provision from the claims asserted in that case, stating:

> In this case, Hazout is not being sued for having breached any duty he owed to Silver Dragon or its stockholders.  He is being sued by Tsang for torts he allegedly committed against Tsang and the Investor Group in the course of negotiating on behalf of Silver Dragon and by using his powers at Silver Dragon to divert their funds to his affiliate.

*See also Pestolite, Inc. v. Cordura Corp.*, 449 A.2d 263 (Del. Sup. Ct. 1982), in which the Court stated as follows:

> Delaware does not have a significant and substantial interest in overseeing each and every tort and contract claim that may be asserted against the directors of a Delaware corporation no matter where the contract was made or performed or the tort occurred.  In the absence of such substantial interest or legitimate State purpose, the mere status as director of a Delaware corporation, standing alone, is not a significant basis for the individual Defendants to reasonably anticipate being haled into this Court....Clearly there is no nexus between Delaware and the acts complained of since these acts do not arise out of or relate to any breaches of duties imposed on the individual Defendants by the very laws which empowered the Defendants to act in their corporate capacities.

*See also Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1133 (Del. Ch. 2008), in which the court found that the Internal Affairs Claim Provision did not provide for jurisdiction over the defendant directors because "there are no allegations that the directors of Project Greenfield *qua* directors of Project Greenfield breached any duties owed to Project Greenfield or to its corporate parent.  Rather, the wrongs alleged here are contract claims 'unconnected with the internal affairs

or corporate governance issues that Delaware law is especially concerned with.'" (Internal citation omitted).

Here the Complaint is bereft of any facts which demonstrate a nexus between the alleged wrongful conduct and Sagrera acting in his capacity as a director/officer of ViceChem. Moreover, the Complaint does not allege that any act, action or omission occurred in, or had any effect in, Delaware. This compels the conclusion that § 3114 does not confer jurisdiction over Sagrera. *See Kelly v. McKesson HBOC, Inc.*, 2002 WL 88939, * 16 (Del. Sup. Ct. 2002).

Further, the mere fact that the plaintiff labels a claim as "breach of fiduciary duty" does not mean that such a claim has been stated. As discussed below, the plaintiff has not alleged any facts which support a claim sounding in breach of fiduciary duty.

It is abundantly clear that plaintiff's claims concern only his own individual rights and not rights held by ViceChem or its shareholder body. Thus, all of the factual allegations relate to plaintiff's personal property rights and his alleged personal damages arising from acts or omissions affecting him alone. *See* Complaint, ¶¶ 60 to 68 (this is not intended to concede that any of the allegations, taken separately or together, state a claim for relief against Sagrera). Indeed, the crux of this action is the alleged creation of documents which contain the plaintiff's forged signature. And the only damages the plaintiff seeks to recover are damages personal to him. Complaint, ¶ 68 ("As a result, Chen lost over $2 million in equity value, $300,000 in salary, his control over his Intellectual Property, and a $1 million business opportunity."). These are not the types of claims to which § 3114 is intended to be, or consistent with due process can be, applied.

Finally, there is no allegation that Sagrera was acting in his capacity as an officer or director of ViceChem, as opposed to in a personal capacity.

As the court held in *Hazout*, directors of Delaware corporations cannot be hailed into court in Delaware based on what is, as most, a private transaction which does not affect the corporation or its shareholders by the simple expedient of labelling a claim as breach of fiduciary duty.

**C.   <u>Leave to Serve Sagrera Should Be Denied</u>**

It is respectfully submitted that leave to effectuate additional service on Sagrera should be denied because he is not subject to personal jurisdiction in Delaware.

The burden of demonstrating personal jurisdiction is on the plaintiff. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009).

The Complaint does not contain any factual allegations which would permit the exercise of personal jurisdiction over Sagrera. Indeed, the Complaint lacks any allegations concerning any contact between Sagrera and Delaware, save for the claim that Mr. Sagrera was an officer and director of a Delaware corporation.

The lack of contact between Sagrera and Delaware is confirmed by Mr. Sagrera's declaration in which he swears that he has no contact with Delaware, he has no bank accounts in Delaware, he owns no property in Delaware, and he conducts no business in Delaware. *See generally* Sagrera Dec.

Delaware's long arm statute, 10 *Del. C.* § 3104(c)(1)-(4), permits a court to exercise jurisdiction over a defendant which in person or through an agent: (1) Transacts any business or performs any character of work or service in the State; (2) Contracts to supply services or things in this State; (3) Causes tortious injury in the State by an act or omission in this State; or (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct

in the State or derives substantial revenue from services, or things used or consumed in the State.

Plaintiff does not allege that Sagrera transacted any business or performed any work in Delaware.  Nor does he allege that Sagrera contracted to supply services or things in Delaware. Finally, the Complaint does not allege that Sagrera caused any injury in Delaware or that he "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State."

The only allegation about Delaware contained in the Complaint is that Sagrera is a director of a Delaware corporation.  However, the law is well-settled that merely being an officer or director of a Delaware corporation – without performing any acts in Delaware – is not a sufficient basis on which to permit the exercise of personal jurisdiction. *See TriStrata Tech., Inc. v. Neoteric Cosmetics, Inc.*, 961 F. Supp. 686, 690 (D. Del. 1997)("absent actual conduct in Delaware, Dr. Murad's position as president, stockholder and researcher for Murad Research would be insufficient to establish jurisdiction").

## III.   <u>LACK OF SUBJECT MATTER JURISDICTION</u>

If considered further, this action should be dismissed for lack of subject matter jurisdiction.

### A.   <u>Lack Of Federal Question Jurisdiction</u>

Sagrera requests that the Court consider this motion as a facial attack on subject matter jurisdiction. *See, e.g., Gould Electronics Inc. v. U.S.*, 220 F.3d 169 (3d Cir. 2000)(discussing the difference between a facial attack and a factual attack).

Plaintiff asserts jurisdiction based on the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA").  *See* Complaint, D.I. 1, at page 2.  Plaintiff bears the burden of proving that subject matter jurisdiction exists.  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d

Cir. 2015).

The CFAA is a criminal statute which penalizes unauthorized access, i.e., "hacking," into computers. *P.C. Yonkers v. Celebrations The Party And Seasonal Superstore, LLC,* 428 F.3d 504, 510-512 (3d Cir. 2005). The CFAA provides a civil remedy to a "person who suffers damage or loss by reason of a violation of this section...." 18 U.S.C. § 1030(g); *P.C. Yonkers,* 428 F.3d at 510-512. The legislative history of the statute demonstrates that it is directed at the "unauthorized removal of information or programs from a computer's database." *Pac. Aero. & Elec., Inc. v. Taylor*, 295 F. Supp.2d 1188 (E.D. Wash. 2003). As shown below, the Complaint is bereft of any allegations which would support a claim under the CFAA and, indeed, the allegations which are made negate any such cause of action.

1.   **Plaintiff has not alleged facts sufficient to allege a violation of the CFAA**

Plaintiff relies on 18 U.S.C. §§ 1030(a)(4) and (b). *See* Complaint at p. 27. Sections 1030(a)(4) and (b) of the CFAA provide for liability in favor of a plaintiff who suffers "loss or damage" against "whoever:"

- knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value; § 1030(a)(4);

- conspires to commit or attempts to commit an offense under subsection (a) of this section; § 1030(b).

No facts are pled in the Complaint which support either of these claims. Accordingly, the Court does not have federal question jurisdiction.

First, it is clear from the plain language of the statute that the wrong intended to be redressed is the unauthorized *access* to a protected computer. Plaintiff does not allege that Sagrera *accessed* any computer. Nor does plaintiff claim that Sagrera had authorized access, but exceeded such authorization. All plaintiff alleges is that defendants "used" a protected

computer.  Complaint, ¶ 88.  This is a material distinction because the CFAA regulates access to computers of others, not "use" of computers.  *See, e.g., Dresser-Rand Co. v. Jones*, 957 F. Supp.2d 610, 615 (E.D. Penn. 2013) (dismissing complaint because the plaintiff "fail[ed] to meet the basic requirement of accessing a computer.  [Plaintiff] does not allege in its Complaint that [defendant] had any interaction with its computers, computer systems, or network—only that [defendant] viewed and edited [plaintiff's] documents on his own computer that he received via e-mail attachments.... [Defendant] may have accessed [plaintiff's] documents, but he never accessed [plaintiff's] computers, as required under the CFAA.").

Nor does the plaintiff allege, except in a conclusory manner, that the computer Sagrera is alleged to have used was a "protected computer."  *See* 18 U.S.C. § 1030 (e)(2)(B) (a "protected computer" is any computer "used in or affecting interstate or foreign commerce or communication....").[2]  All that plaintiff alleges is that:

> Defendants used a 'protected computer' which is defined as any computer used in interstate commerce, including having a connection to the internet.

Complaint at ¶ 88.  Because the plaintiff does not state any factual basis for this allegation, and because it is conclusory, it is not accepted as true.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Plaintiff's failure to plead predicate facts arises because the plaintiff does not allege that he owned, controlled, or has any knowledge concerning, the computer which he alleges was used.  In a typical CFAA case, the plaintiff can allege facts sufficient to demonstrate that a "protected computer" was accessed because it is the plaintiff's computer which is at issue.  The

---

[2]     Plaintiff does assert that "the internet was used to email fraudulent documents back to Chen" (Complaint, ¶ 88), but he does not allege that the same computer which (allegedly) was used to create the documents was used to email the documents.  In any event, emailing allegedly fraudulent documents is not a violation of the CFAA.

inability to allege facts necessary to state a claim does not excuse the obligation to do so.

Even assuming that the plaintiff had alleged access to a "protected computer," the plaintiff fails to allege that Sagrera accessed any computer "without authorization." This is a crucial omission because the focus of the CFAA is on *unauthorized* access. *See, e.g., CollegeSource, Inc. v. AcademyOne, Inc.*, 597 Fed. Appx. 116, 129 (3d Cir. 2015).

It is clear from the Complaint that what the plaintiff is alleging that defendants used their own computers to modify documents. *See* Complaint ¶ 89 (defendants used "their registered copies of Adobe"). If the defendants were using "their" software, then it must be reasoned that they were using "their" computers. In addition, the plaintiff alleges that defendants used computers "used by their corporations." Complaint ¶ 89.

It is readily apparent that a person who uses his or her own computer does so with authorization. In addition, any claim of unauthorized access is negated by the allegation that defendants were using "their" software.

Plaintiff's claim that Sagrera "exceeded [his] authorized access" (Complaint ¶ 89) fares no better because there are no allegations concerning the scope of Sagrera's "authorized" access. Without specification as to the scope of authorization, there can be no conclusion that authorization was exceeded. *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 206 (4th Cir. 2012).

Moreover, there is no claim that Sagrera exceeded authorized access to obtain or alter information in a computer. Instead, the sole allegation is that defendant misused software. *See* Complaint ¶ 89 ("Defendants exceeded their authorized access when they used their registered copies of Adobe Photoshop and other Adobe products to conduct unlawful activities…"). This allegation is insufficient because the CFAA does not criminalize the use of computer programs,

it governs unauthorized access to information. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 597 Fed. Appx. at 129, citing to the definition of "exceeds unauthorized access" in 18 U.S.C. § 1030(e)(6).

Plaintiff's attempt to assert a claim under §1030(a)(4) fails for the additional reason that the Complaint does not allege that Sagrera obtained anything of value. All that the plaintiff alleges is that he suffered harm (albeit not damage or loss cognizable under the CFAA). No benefit to Sagrera has been alleged. This is fatal to the plaintiff's claim. *See P.C. Yonkers*, 428 F.3d at 508 (holding that requirement under §1030(a)(4) that defendant "obtained anything of value" presented a hurdle that "plaintiffs have not demonstrated they can overcome" and rejecting argument that court should infer receipt of valuable information "from the mere fact" of unauthorized access).

Because the plaintiff has not alleged any facts which support a claim that any of the defendants "accessed," a "protected computer," that they exceeded authorized access, or that they obtained anything of value, the attempt to assert a claim under the CFAA fails and federal question jurisdiction is lacking.

In addition, because the plaintiff has failed to allege facts sufficient to assert a claim under § 1030(a)(4), he has failed to state a claim under § 1030(b).

### 2.    Plaintiff has not alleged statutory "loss" or "damage"

If considered further, the Court should find that subject matter jurisdiction does not exist under the CFAA because the plaintiff has not alleged that he suffered any "loss" or "damage" as those terms are defined in the statute.

"Damage" means "impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8), and "loss" means "any reasonable cost to any

victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

Here, there is no claim that plaintiff suffered any "damage" or "loss" which is cognizable under the CFAA.  To the contrary, the plaintiff claims that he suffered loss in equity valuation, lost employment, and other unspecified business opportunities.  (Complaint pp. 6-7).  Such "losses" are not within the purview of the statute.  *See, e.g., Nexans Wires S.A. v. Sark-USA, Inc.*, 166 Fed.Appx. 559 (2d Cir. 2006); *Eagle v. Morgan*, 11-4303 (E.D. Pa. Oct 4, 2012) (collecting cases).

Plaintiff's cause of action is not salvaged by this claim that he has spent money to investigate the claims he is asserting in this action.  *See, e.g.,* Complaint, pp. 28-29.  Such expenditures do not constitute "damage" within the purview of the CFAA because the plaintiff does not allege that he spent any funds to protect his computer system or that any computer system belonging to him suffered any damage.  *See In re Veritas Holdings, Inc.*, 536 B.R. 589, 620 (Bankr. D. Del. 2015)(denying motion for leave to amend to asset claim under the CFAA because the plaintiff "does not allege anywhere in its Amended Complaint that its computer system has been damaged as a result of Defendants' alleged misconduct."); *Jarosch v. American Family Mutual Ins. Co.*, 837 F. Supp.2d 980, 1020 (E.D. Wis. 2011), holding that costs to investigate do not constitute "loss" because "many courts have held that to state a claim based on loss, the loss must relate to the impairment or unavailability of data on a computer.").

The failure to allege facts sufficient to support a claim of "loss" or "damage" within the purview of the statute precludes a claim under the CFAA and warrants dismissal of this action

for lack of jurisdiction. *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 148-149 (3d Cir. 2015) (affirming dismissal of complaint because "we see no 'damage' or 'loss' in the pleadings.").

**B.      There Is No Diversity Jurisdiction**

      **1.      Plaintiff's allegations concerning his domicile are conclusory**

      Plaintiff alleges in his Complaint that he is "domiciled in Captain Cook, Hawaii" and that he has spent 9 months in Hawaii in the past year.  Complaint, page 3.  Plaintiff does not disclose where he spend the other 3 months of the prior year.

      Plaintiff's current allegations as to his domicile must be contrasted against his prior factual assertions regarding domicile.  Thus, in both the Complaint and the FAC in the Prior Action the plaintiff alleged that he was domiciled in New Jersey, an allegation which demonstrates the lack of complete diversity because defendant Lowenstein Sandler is alleged to have is domicile in New Jersey.  *See* D.I. 2 in the Prior Action at p. 2 and D.I. 6 in the Prior Action at p. 1.

      The law is well-settled that a party who claims to have changed its domicile bears a heavy burden.  *See Washington v. Hovensa, LLC*, 652 F.3d 340, 344 (3d Cir. 2011) ("[a] domicile once acquired is presumed to continue until it is shown to have been changed").  Here, no facts have been pled to support the plaintiff's significant (and opportunistic) change in domicile.

      **2.      Plaintiff's allegations of domicile are contradicted by his prior pleadings**

      In addition to the foregoing, a factual attack on subject matter jurisdiction is stated because the plaintiff's allegation is inconsistent with his prior allegations and because his allegations are disputed.  *See Mennen Co. v. Atlantic Mut. Ins. Co.*, 147 F.3d 287 (3d Cir. 1998)

(holding that "it is axiomatic that a party may not confer or defeat jurisdiction by mere pleading. Rather, subject matter jurisdiction depends upon facts of record, and when any question arises as to the existence of jurisdiction a federal court is obligated to make an independent determination of those facts.") (internal citations omitted).  At a minimum, if this motion to dismiss is denied, an evidentiary determination is required based on the factual record.  *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281 (3d Cir. 2006).

Thus, while plaintiff alleges in his Complaint that he is domiciled in Hawaii, as shown above he previously alleged that he was domiciled in New Jersey.

At a minimum, the factual allegations made by the plaintiff call into question his current opportunistic, bare bones, and unsupported, allegation that his domicile is in Hawaii.

## IV.    IF NOT OTHERWISE DISMISSED, THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)

The plaintiff asserts four causes of action: breach of fiduciary duty, common law fraud, violation of the CFAA, and tortious interference with prospective business relationship.  Each of the causes of action should be dismissed.

### A.    Breach Of Fiduciary Duty

Not every (alleged) wrongful act or action by someone who is a director of a corporation which (allegedly) damages someone who is a shareholder of that corporation gives rise to a claim sounding in breach of fiduciary duty.  Here, plaintiff goes to great lengths to plead that he suffered an alleged injury which was separate and distinct from any injury suffered by the corporation or the shareholder body as a whole.  Such allegations ultimately are self-defeating because they negate any claim that Sagrera took any of the actions alleged in his capacity as an officer or director of ViceChem.

Stated differently, while plaintiff uses the words "breach of fiduciary duty," the claim

16

presented is nothing more than a personal claim by plaintiff against Sagrera. No "fiduciary" duty is involved or implicated.

Simply put, the wrong alleged here is "unconnected with the internal affairs or corporate governance issues that Delaware law is especially concerned with." *See Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939), in which the Court explained in detail the fiduciary duty of loyalty owed by officers and directors and confirmed that their duty principally was to protect the interests of the corporation, to refrain from acts which might injure the corporation, and to place the interests of the corporation and its shareholders ahead of the director's personal interests.

The attempt by Chen to label his claim as one sounding in breach of fiduciary duty should be rejected and the First Cause of Action should be dismissed.

Further, Chen's claim that Sagrera acted wrongfully when he (allegedly) "diluted the value of Chen's Shares by 98%," is barred by the business judgment rule and should be dismissed for lack of standing because Chen alleges that Sagrera "dilute[d] all shareholders by 98%," Complaint, ¶ 64, which presents a derivative, not an individual, claim.

Plaintiffs other claims of breach (*i.e.,* failure to investigate) are either not actionable because Sagrera had no duty to act, or constitute conduct/decisions which are protected by the business judgment rule.

**B.**   **Common Law Fraud**

    **1.**   **Failure to plead with particularity**

This cause of action should be dismissed pursuant to Rule 9(b) for failure to plead with particularity.

    **2.**   **Failure to state a claim**

To state a claim for common law fraud under Delaware law, the plaintiff must allege

facts which support a claim that Sagrera: (1) falsely represented or omitted facts that he had a duty to disclose; (2) knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) intended to induce the plaintiff to act or refrain from acting; (4) plaintiff acted in justifiable reliance on the representation; and (5) plaintiff was injured by its reliance. *See Universal American Corp. v. Partners Healthcare Solutions Holdings, L.P.*, 61 F. Supp. 3d 391 (D. Del. 2014).

The Complaint fails each of these requirements.

First and foremost, the Complaint fails to allege that any false representation was made to the plaintiff, that the plaintiff was induced to act or to refrain from acting, or that the plaintiff justifiably relied on any representation. To the contrary, what the plaintiff is alleging is that certain of the defendants used documents signed by the plaintiff (which the plaintiff claims were forged) to induce third-parties to take, or not to take, certain actions with respect to the plaintiff. This does not state a claim for fraud by the plaintiff against the defendants.

In addition, the plaintiff does not allege that he, personally, relied on any alleged false statements or representations, to his detriment or otherwise.

Unable to offer such allegations, Chen argues that Sagrera "failed to send hard copies of the contracts purportedly signed by Chen to Chen." Complaint ¶ 78. This is not sufficient to state a claim for fraud because Chen does not allege facts which support a claim that Sagrera had any duty to send hard copies. *See Toner v. Allstate Ins. Co.*, 829 F. Supp. 695 (D. Del. 1993). Even if Sagrera has such an obligation, the failure to do so does not constitute fraud.

Plaintiff then alleges that Sagrera did not "inform Chen that he had purportedly signed an Employment contract and NDIAA were known to be signed and being circulated as such to everyone without Chen's knowledge." Complaint, ¶ 78. Again, this allegation does not state a

18

claim for fraud because no facts have been alleged which support any duty to disclose.  Nor does this alleged conduct constitute fraud.

Finally, the plaintiff's claims of damage are entirely speculative and conclusory.  Thus, the plaintiff asserts damages of "1 million dollars in opportunity costs as well as lost investment opportunities, reputational damages and lost pay," Complaint ¶ 86, but he fails to identify the factual basis for such claimed damages.

**C.**    **Violation Of The CFAA**

As demonstrated above, the plaintiff has not pled facts sufficient to state a claim for relief under the CFAA.  Accordingly, this cause of action should be dismissed.

**D.**    **Tortious Interference**

Under Delaware law, in order to state a claim for tortious interference with prospective business relationship, the plaintiff must allege:

> (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy has been disrupted.

*Gill v. Delaware Park, LLC*, 294 F. Supp.2d 638 (D. Del. 2003).[3]

This cause of action fails to state a claim of "intentional interference" against Sagrera because plaintiff specifically alleges that the documents Sagrera allegedly relied on during his communications with the third-parties were "forged by Lowenstein."  Complaint, ¶ 103.

Further, this cause of action should be dismissed because the plaintiff has not alleged the existence of a "valid business relationship or expectancy" which was sufficiently concrete. *See*

---

[3]    By referring to Delaware law defendant does not waive the right to argue that New York law should be applied to this claim.  However, at the pleading stage, there is no material difference between New York and Delaware law.

*U.S. Bank N.A. v. Gunn*, 23 F. Supp.3d 426 (D. Del. 2014) (holding that "[t]o meet the reasonable probability of a business opportunity prong, a plaintiff 'must identify a specific party who was prepared to enter into a business relationship but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm.'"). *See also Watkins v. Int. Union, Security, Police and Fire Professionals of America*, 2016 WL 1166323 (D. Del. March 23, 2016). Here, all the plaintiff alleges is that he met with "Jerry Allen" and other unnamed "oil executives" and that "The Jerry Allen Group," through an "investor from Dubai" "stated that they were ready to proceed with a million dollar investment and began their due diligence." Complaint, ¶ 103. Merely beginning due diligence is not sufficient to establish a "valid business relationship or expectancy."

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Complaint be dismissed in its entirety.

OF COUNSEL:

David Bolton
David Bolton, P.C.
666 Old Country Road
Suite 509
Garden City, NY 11530
(516) 426-2666
dbolton@boltonpc.com

Dated: September 14, 2016

CONNOLLY GALLAGHER LLP

*/s/ Ryan P. Newell*
Ryan P. Newell (#4744)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, Delaware 19801
(302) 757-7300
rnewell@connollygallagher.com

*Attorneys for Defendant Ricardo Sagrera*

## <u>CERTIFICATE OF SERVICE</u>

I, Ryan P. Newell, certify that on the 14th day of September 2016, I caused true and correct copies of the foregoing document to be filed and served via first-class U.S. mail and email, on the parties listed below:

Ed Ite Chen
P.O. Box 9003
Kailua-Kona, HI 96745-9003
edchen0@gmail.com

*/s/ Ryan P. Newell*
Ryan P. Newell (#4744)